UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL ESPOSITO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>HHB HOLDINGS, INC. and KEVIN CAMPBELL, both d/b/a LOOK GREAT MD,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**PUTATIVE CLASS ACTION** |

Plaintiff Daniel Esposito ("Plaintiff") brings this class action against Defendants HHB Holdings, Inc. and Kevin Campbell, both d/b/a Look Great MD (collectively "Defendants") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. This putative class action is brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the Pennsylvania Telemarketer Registration Act ("TRA"), 73 P.S. §§ 2241-49, and stems from Defendants' practice of harassing consumers nationwide with automated and prerecorded telemarketing calls.

2. Defendants own and operate a full service "medical spa" business that sells aesthetic and cosmetic treatments to consumers at its four locations in Delaware and Pennsylvania. To drum-up new business, Defendants engage in intrusive and unlawful telemarketing campaigns.

3. Defendants' illegal telemarketing activities target individual consumers, without their prior express consent and with little regard for their privacy.

1

4.  Through this putative class action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct, which has resulted in the harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the Classes, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## JURISDICTION AND VENUE

5.  This Court has federal question jurisdiction because this case arises out of violations of federal law (i.e., the federal TCPA). 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6.  Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 18 U.S.C. § 1391(b) because Defendants are headquartered in this district, regularly conduct business in this district, and a substantial part of the events giving rise to Plaintiff's claim occurred in this district.

## PARTIES

7.  Plaintiff Daniel Esposito is a natural person who, at all times relevant to this action, was a citizen of Pennsylvania.

8.  Defendant HHB Holdings, Inc. d/b/a Look Great MD is a Pennsylvania corporation duly organized under the laws of Pennsylvania, with its principal place of business at 200 North Warner Road #121, King of Prussia, PA 19406.

9.  Defendant Kevin Campbell d/b/a Look Great MD is a Pennsylvania citizen who resides at 5022 Camburn Rd., Plymouth Meeting, PA 19462.

2

10. Together, Defendants own and operate, and hold themselves out to the public as, the fictitious entity Look Great MD. It is specifically alleged that each Defendant jointly participated in and endorsed the unlawful conduct alleged herein.

11. No claims in this action are based on any theory of vicarious liability, and no claims are based solely on the status of Defendant Campbell as corporate officer, manager, or owner of the Defendant HHB Holdings, Inc.

12. Rather, the claims against Defendant Campbell are based on the actions of Campbell, and on the fact that Campbell personally participated in the unlawful practices alleged herein; that Campbell knew of, created, and approved of the practices alleged herein; and that Campbell shared in the proceeds of the unlawful practices alleged herein.

## **THE TELEPHONE CONSUMER PROTECTION ACT**

13. The TCPA regulates and restricts the use of automatic telephone equipment.

14. The TCPA protects consumers from unwanted calls that are made with autodialers and/or prerecorded messages.

15. The TCPA prohibits: (A) any person from calling a cellular telephone number; (B) using an automatic telephone dialing system **or** prerecorded message; (C) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

16. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

17. In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly,

are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102-243, § 11.

19. In support of this, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

19. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* at §§ 12-13.

20. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

21. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.

22. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone*

4

*Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

23. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

24. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

25. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

26. In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

27. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

5

28. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

29. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

30. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

31. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

32. Congress recognized that not only can unsolicited calls be a nuisance, but also may cause the receiver of the unsolicited communications to incur actual out-of-pocket losses.

33. Persons, like Plaintiff herein, have no control to stop unsolicited and unwanted telemarketing calls to their cell phones.

34. Every such call uses available cell phone minutes, and any recorded voicemail messages use data and/or storage space; the longer the message is, the more data and storage space is used.

35. Once an unsolicited voicemail message is received, not only is it a nuisance to the receiver, but as importantly, that receiver may be forced to incur unwanted data or storage charges from their cell phone carrier.

36. As set forth herein, that is exactly what occurred to Plaintiff and other members of the putative class.

37. Plaintiff and the members of the proposed class received unsolicited marketing calls and voicemail messages from Defendants, and consequently incurred additional data and/or storage charges to their cell phone accounts, all because Defendants wished to advertise and market its products and services for their own benefit and profit.

38. Moreover, the Plaintiff and the proposed class suffered, *inter alia*, aggravation, frustration and annoyance.

39. "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. Jan. 30, 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016)) (emphasis in original).

### THE UNIFORM POLICIES OF DEFENDANT THAT GIVE RISE TO THE CAUSE OF ACTION

40. On September 12, 2018, at 9:58 a.m., Defendants called Plaintiff's cellular telephone ending in – 0757 (the "0757 Number").

41. The call came from telephone number 610-490-8530.

42. Plaintiff was disrupted by the call and stopped what he was doing to look at his phone, but he did not answer because he did not recognize the number.

43. Defendants left the following voicemail message on Plaintiff's cellular phone:

> Hi, this is Nurse Maureen from Look Great MD. I'm calling to tell you about some of our end-of-summer specials. These are the best prices of the year. Laser hair removal is right now as low as 89 dollars per area. Botox is 1050 per unit. Our restylane filler is 425 per syringe per area, and we also have an awesome promotion on cool sculpting for just 475 per treatment session. Give us a call back to take advantage of these great specials or to get some more information. The phone number is 610-490-8530.

44. Plaintiff listened to Defendants' voicemail, which was preceded by a 3-4 second pause. This pause, along with the impersonal and generic nature of Defendants' message demonstrates that the message was prerecorded and that Defendants utilized an ATDS in making the calls.

45. As alleged with specificity herein, Defendants' automated call and prerecorded voicemail message constitutes telemarketing as Defendants were attempting to market and sell their aesthetic and cosmetic services to Plaintiff via the call.

46. The telephone number that Defendants, or their agents, called was assigned to a cellular telephone service for which Plaintiff incurs a charge pursuant to 47 U.S.C. § 227(b)(1).

47. Plaintiff is not a customer of Defendants, has never visited Defendants' medical spas, and has not purchased or used any goods or services offered by Defendants at any time prior to the filing of this Complaint.

48. Defendants were required to obtain Plaintiff's "prior express consent," as defined under the TCPA, before making the automated call and/or transmitting the prerecorded message.

49. Under the TCPA, "prior express consent" is defined as:

8

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisement or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8).

50. Plaintiff never signed any type of agreement whatsoever with the Defendants.

51. As such, Plaintiff never gave prior express consent to receive Defendants' advertisements.

52. Plaintiff further alleges that Defendants, or its agents, sent the above prerecorded messages not only to Plaintiff, but also to numerous other individuals, on their cellular telephones, without obtaining their prior express consent.

53. The prerecorded messages were sent to Plaintiff and the putative class for general marketing purposes, for the commercial benefit of Defendants, and specifically to solicit the sale of Defendants' cosmetic services.

54. The telephone number 610-490-8530 is owned by and/or operated on behalf of Defendants.

55. The prerecorded message was **not** sent to Plaintiff and the putative class for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

56. The prerecorded message sent to Plaintiff and the putative class was sent via an ATDS, as defined by 47 U.S.C. § 227 (a)(1) and as prohibited by 47 U.S.C. § 227 (b)(1)(A).

57. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

58. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ... an

9

artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ...." 47 U.S.C. § 227 (b)(1)(A)(iii).

59. As outlined herein, the unsolicited commercial prerecorded messages sent by Defendants or its agents to Plaintiff and the putative class violated 47 U.S.C. § 227(b)(1).

60. Plaintiff is the subscriber and sole user of the 0757 Number, and is financially responsible for phone service to the 0757 Number.

61. Upon information and belief, Defendants utilized a combination of hardware and software systems to make the calls at issue in this case. The systems utilized by Defendants have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

62. Through its automated telemarketing call and prerecorded message, Defendants violated Plaintiff's substantive rights under the TCPA and caused Plaintiff actual harm.

63. Further, Plaintiff suffered the following injuries:

    a. Inconvenience;

    b. Unwanted occupation of his time and mental energy;

    c. Unwanted occupation of his cellular telephone;

    d. Nuisance;

    e. Trespass on his cellular telephone; and

    f. Aggravation and annoyance.

## CLASS ALLEGATIONS

64. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

65. Plaintiff brings this case on behalf of a Class defined as follows:

**All persons within the United States who, within the four years prior to the filing of this Complaint, received an automated telephone call or prerecorded message made through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice, from Defendants or anyone on Defendants' behalf, promoting Defendants' goods or services, to said person's cellular telephone number, who had not expressly consented in writing to receiving such calls.**

66. Plaintiff also brings this case on behalf of a Subclass (hereinafter the "Message Subclass") defined as follows:

**All persons within the United States who, within the four years prior to the filing of this Complaint, received the message restated in Paragraph 43.**

67. Plaintiff also brings this case on behalf of a Subclass (hereinafter the "PA TRA Subclass") defined as follows:

**All Pennsylvania citizens, who had not granted Defendants prior express consent nor had a prior established business relationship, who received a call made by or on behalf of Defendants that promoted Defendants' products or services, within four years prior to the filing of the complaint.**

68. Defendants and their employees or agents are excluded from the Class and Subclasses (hereinafter collectively referred to as the "Classes"). Plaintiff does not know the number of members in the Classes, but believes the members of the Classes number in the several thousands, if not more.

69. Upon information and belief, Defendants have placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers without their prior express consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

70. The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of the members of the Classes is a matter capable of ministerial determination from Defendants' call records.

11

71. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

(1) Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

(2) Whether Defendants made non-emergency prerecorded calls to Plaintiff's and Class members' cellular telephones;

(3) Whether Defendants can meet their burden of showing that they obtained prior express consent to make such calls;

(4) Whether Defendants' conduct was knowing and willful;

(5) Whether Defendants are liable for damages, and the amount of such damages; and

(6) Whether Defendants should be enjoined from such conduct in the future.

72. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely violates the TCPA is correct, Plaintiff and the members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

73. Plaintiff's claims are typical of the claims of the members of the Classes, as they are all based on the same factual and legal theories.

74. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

75. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each

member of the Classes resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Classes prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

76. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Class and the Message Subclass)**

77. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

78. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

79. Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls to the cellular telephones of Plaintiff and Class Members.

80. Defendants – or third parties directed by Defendants – made prerecorded or artificial voice calls to the cellular telephones of Plaintiff and Class Members.

81. These calls were made without regard to whether Defendants had first obtained express written consent to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and Class Members when the subject calls were made.

82. Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system and/or an artificial or prerecorded voice to make marketing telephone calls to the cell phones of Plaintiff and Class Members without their prior express written consent.

83. As a result of Defendants' conduct, and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Class and the Message Subclass)**

84. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

85. At all times relevant, Defendants knew or should have known that their conduct as alleged herein violated the TCPA.

86. Defendants knew that they did not have prior express written consent to make these calls, and knew or should have known that they were using equipment that constituted an automatic telephone dialing system, and/or that they were using an artificial or prerecorded voice in violation of the TCPA.

87. Because Defendants knew or should have known that Plaintiff and Class Members had not given prior express consent to receive their autodialed/prerecorded calls, the Court should

treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

88. As a result of Defendants' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III
### Violation of the Pennsylvania Telemarketer Registration Act
### (On Behalf of the PA TRA Class)

89. Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

90. By the actions alleged herein, Defendants violated the Pennsylvania Telemarketer Registration Act, 73 P.S. §§ 2241 – 2249 ("TRA").

91. Further, as alleged with specificity herein, Defendants engaged in several abusive telemarketing acts and practices that violated provisions of 16 CFR 310 (relating to telemarketing sales rule), in violation of § 2245(a)(9) of the TRA.

92. Moreover, Defendants failed to register with the Office of Attorney General prior to engaging in telemarketing activities in the Commonwealth of Pennsylvania, as required by 73 P.S. §§ 2243.

93. Under § 2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*.

94. As a result of Defendants' violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. § 201-9.2(a).

95. As a result of Defendants' violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendants willfully and/or knowingly violated the TRA. As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 § 201-9.2(a).

96. As a result of Defendants' violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 § 201-9.2(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on Plaintiff's own behalf and on behalf of the Class members, respectfully pray for the following relief:

a. On the First Count for Negligent Violations of the TCPA, 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member: (i) $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) as a result of Defendants' negligent violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

b. On the Second Count for Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) as a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227 (b)(1); injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

c.  On the Third Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. § 201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  May 13, 2019

**DeNITTIS OSEFCHEN PRINCE, P.C.**

By: _____

Shane T. Prince, Esq. (SP-0947)
Stephen P. DeNittis, Esq (SD-0016)
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(T): 215-564-1721
sdenittis@denittislaw.com
sprince@denittislaw.com

*Attorneys for Plaintiff*